IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NEKESHIA-SHIONDRAIL           §
HENDERSON,                    §
                              §
         Plaintiff,           §
                              §
V.                            §         No. 3:21-cv-3212-K-BN
                              §
IBERIABANK, ET AL.,           §
                              §
         Defendants.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff NeKeshia-Shiondrail Henderson filed this lawsuit *pro se*, paying the
filing fee to do so. *See* Dkt. No. 3. United States District Judge Ed Kinkeade referred
Henderson's lawsuit to the undesigned United States magistrate judge for pretrial
management under 28 U.S.C. § 636(b) and a standing order of reference. After
Defendants moved to dismiss the original complaint, *see* Dkt. Nos. 9, 10, 17-19, 21,
Henderson filed an amended complaint, *see* Dkt. No. 22. Defendants then moved to
dismiss the amended complaint, again under Federal Rules of Civil Procedure
12(b)(2) and 12(b)(6). *See* Dkt. Nos. 23-27.

"An amended complaint supersedes the original complaint and renders it of no
legal effect unless the amended complaint specifically refers to and adopts or
incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th
Cir. 1994) (per curiam) (citation omitted)). Because Defendants elected to file motions
to dismiss the amended complaint, as opposed to reasserting their motions to dismiss
the original complaint, the Court terminated as moot the original motions to dismiss

[Dkt. Nos. 9, 17]. Henderson responded to the motions to dismiss her amended complaint. *See* Dkt. Nos. 29-31. And Defendants replied. *See* Dkt. Nos. 34, 35.

Prior to responding, Henderson, citing the Freedom of Information Act (FOIA) and the Privacy Act, requested that the Court disclose "all bonds, bonding or other related/connected documents and/or instruments." Dkt. No. 32. The Court summarily denied Henderson's motion by electronic order. *See* Dkt. No. 33. Henderson then moved for clarification. *See* Dkt. No. 36. And the Court clarified its prior ruling, noting that neither the Privacy Act nor FOIA applies to the federal courts. *See* Dkt. No. 37.

Henderson then moved the Court to take judicial notice of "the Constitution, federal codes and regulations, legal definitions, case law and maxims of law." Dkt. No. 38. And Defendants objected. *See* Dkt. Nos. 39, 40.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the pending motions to dismiss, deny the motion for judicial notice, and dismiss this action with prejudice.

## Applicable Background

Through the amended complaint, Henderson asserts claims against two banks (Defendant First Horizon Bank, as successor by merger to IBERIABANK, and Defendant UNIFY Financial Federal Credit Union) and their alleged chief financial officers (Defendants Anthony Restel and Nathan Montgomery, respectively) based on the banks' status as "creditors," under which, according to Henderson, they "are required to make disclosures early and conspicuously in writing in a form that the consumer can keep" and "to promptly respond with written acknowledgment to

consumer billing complaints and investigation of billing errors and send written explanations not later than [30 days] after receipt of notice." Dkt. No. 22 at 3. Based on this, Henderson alleges that she "initiated a non-judicial commercial process with [each CFO] in September 2020, intended to affect an out-of-court settlement of this matter." *Id.* But neither CFO responded to her in 30 days. *See id.* at 4. So, according to Henderson, the defendants are in default. *See id.* She therefore "brings this action for recovery, in commerce, for enforcement of such default." *Id.* at 4.

In addition to seeking recovery for the alleged default, Henderson alleges claims under the Thirteenth Amendment to the United States Constitution, the Fair Credit Billing Act (the FCBA), and the Fair Credit Reporting Act (the FCRA) and for fraud. *See id.* at 4-14.

## Legal Standards

"[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)). And, when a nonresident defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

This defense "exists to ensure fairness to defendants and to protect

federalism." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). Consistent with these values,

> a defendant must have "fair warning" that his activities may subject him to another state's jurisdiction. That warning permits the defendant to "structure its primary conduct to lessen or avoid exposure to a given State's courts." The limits on specific jurisdiction also "ensure that States with little legitimate interest in a suit" cannot wrest that suit from "States more affected by the controversy."

*Id.* (quoting *Ford Motor*, 141 S. Ct. at 1025).

If the court rules on the defense without an evidentiary hearing, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). And the Court will "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Id.* (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam)).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, [federal courts] only

consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Two types of personal jurisdiction may be exercised over a nonresident defendant: general and specific. "General jurisdiction 'requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (quoting *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)). "Specific jurisdiction, on the other hand, demands a connection between the suit and the forum." *Id.* (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017)).

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l*

*Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide*, 444 U.S. at 297)). This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up). "That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden*, 571 U.S. at 285). "Rather, jurisdiction is proper only where the 'defendant *himself* made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in turn, *Burger King*, 471 U.S. at 475)).

The Court should take up a lack-of-personal-jurisdiction argument first, because "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (per curiam) (citing *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss."); citation omitted).

Turning to Rule 12(b)(6), to decide a motion to dismiss under this rule, for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and

"instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson*, 574 U.S. at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018),

then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for

all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). While the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a),

and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, Fed. R. Civ. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

Starting with Restel's request for dismissal under Rule 12(b)(2), Henderson only alleges that he is "the Chief Financial Officer of IberiaBank" and that the "principal place of business" for IberiaBank is "in Lafayette, LA." Dkt. No. 22 at 2. And she does not respond to Restel's arguments based on personal jurisdiction. So Henderson has not carried her burden to establish a prima facie case of personal jurisdiction through nonclusional factual allegations that reflect that the Court's exercising jurisdiction over Restel comports with due process. *Cf. SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013) ("The fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation. Further, the fact that an agent of a company has an ownership interest or otherwise exercises control over the company is not a sufficient basis on which to assert limited personal jurisdiction over that individual in another state in which the company does business. Plaintiff has not pled sufficient facts to subject the Individual Defendants to this Court's jurisdiction. The proposed Second Amended Complaint alleges no

specific facts demonstrating that the Individual Defendants purposely availed themselves of the privilege of acting in Michigan. Plaintiff avers only that the Court has jurisdiction by virtue of the fact that the Individual Defendants are 'executives' of FBD." (citations omitted)).

Moving to the substance of her allegations, Henderson fails to lay out facts that are sufficient to state any claim that is plausible – that is, facts to support a claim that is more than speculative or from which the Court may reasonably infer liability for any harm alleged.

First, Henderson alleges no legal basis for the default claim – for example a default judgment entered under Federal Rule of Civil Procedure 55. *Cf. United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." (citations omitted)).

Next, to support recovery under 42 U.S.C. § 1983, Henderson alleges that Defendants violated her rights protected by the Thirteenth Amendment by "compelling [her] to perform labor to pay off a debt" that they "failed, refused or neglect[ed] to validate." Dkt. No. 22 at 9.

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned

up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941))). Henderson fails to make this crucial allegation. In addition, "[n]umerous courts have 'found that banks or their employees do not perform a function that is traditionally the exclusive province of the state.'" *Lander v. JPMorgan Chase Bank Nat'l Ass'n*, No. 4:21-CV-00353-ALM-CAN, 2022 WL 819214, at *2 (E.D. Tex. Feb. 23, 2022) (quoting *Herndon v. Scottrade*, No. 3:17-cv-3465-B-BH, 2018 WL 5115077, at *2 (N.D. Tex. Sept. 24, 2018), *rec. adopted*, 2018 WL 5113168 (N.D. Tex. Oct. 19, 2018); collecting cases), *rec. adopted*, 2022 WL 811066 (E.D. Tex. Mar. 16, 2022).

And, even if some state action had been plausibly alleged, Henderson's obligation to pay a debt does not allege a plausible claim of involuntary servitude, a constitutional claim typically asserted by an employee of a defendant.

"[P]recedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical or legal coercion." *United States v. Kozminski*, 487 U.S. 931, 944 (1988). And "[t]he Fifth Circuit defines involuntary servitude as 'an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement.'" *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 162 (5th Cir. 1996) (quoting *Watson v.*

*Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990)). So, "'[w]hen the employee has a choice, even though it is a painful one, there is no involuntary servitude,'" because the "prerequisite" "showing of compulsion" is missing. *Brooks*, 84 F .3d at 162 (quoting *Watson*, 909 F.2d at 1552); *see Crawford v. Louisiana*, Civ. A. No. 14-1190, 2015 WL 854035, at *3 (E.D. La. Feb. 26, 2015) ("Unless a plaintiff alleges that he does not have the option of leaving his job or was forced to work against his will, a Thirteenth Amendment claim must be dismissed." (citations omitted)).

Henderson next alleges claims under two federal statutes: the FCBA and the FCRA.

As to the FCBA, she asserts, "[i]n violation of [this statute, that] Restel and Montgomery failed, refused or neglected to promptly respond and send written acknowledgment 'not later than thirty days after the receipt of the notice'" and that "IberiaBank and Unify failed, refused or neglected to provide validation of debt and proof of claim of the disputed alleged debt, and in violation of federal law, continued collection activities." Dkt. No. 22 at 11 (all caps omitted); *see id.* at 12 (appearing to further allege that Unify's repossession of her Jeep violated the FCBA).

While Henderson fails to identify which provision of the FCBA was allegedly violated, considering the 30-day allegation, the Court should liberally construe her FCBA-specific allegations as asserting a claim under 15 U.S.C. § 1666, which "provides a procedure through which a debtor can dispute statements containing a billing error issued by a creditor." *Esquibel v. Chase Manhattan Bank U.S.A., N.A.*, 276 F. App'x 393, 396 (5th Cir. 2008) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1264

(5th Cir. 1986)).

> If a debtor sends a creditor a written billing-error notice in accordance with the FCBA's requirements and if the creditor receives this notice within sixty days of transmitting the challenged billing statement, the FCBA imposes two separate obligations upon the creditor: the creditor must send a written acknowledgment of the notice within thirty days and must investigate the matter and either correct the account or give written explanation of the disputed charge within ninety days. *See* 15 U.S.C. § 1666; *American Exp. Co. v. Koerner*, 452 U.S. 233, 236 (1981); *Pinner*, 805 F.2d at 1264. To trigger these obligations, a valid FCBA billing error notice must meet the following requirements: (1) the debtor identifies her name and account number, (2) the debtor "indicates [her] belief that the statement contains a billing error and the amount of such billing error," and (3) the debtor explains her belief that the statement contains a billing error. *See* 15 U.S.C. § 1666(a).

*Id.*

But Henderson has not alleged a plausible FCBA claim because, at a minimum, her allegations fail to identify a billing error under the statute. *See* 15 U.S.C. § 1666(b); *Binder v. Bank of Am. Corp.*, No. 3:10-cv-770-B, 2010 WL 5017314, at *3 (N.D. Tex. Nov. 22, 2010) (declining to adopt an "expansive interpretation of a FCBA billing error"). *See also Rhodes v. Whole Foods Market, Inc.*, No. SA-07-CV-0641 FB (NN), 2007 WL 3256236, at *2 (W.D. Tex. Nov. 5, 2007) (finding Section 1666 only applicable to "open-end credit plans," i.e., credit cards and lines of credit, an allegation that Henderson also fails to make).

As actionable under the FCRA, Henderson alleges that the banks "continued to report [her] as delinquent, after failing to validate the debt or provide any proof of claims." Dkt. No. 22 at 12; *see also id.* at 13 ("As a result of IberiaBank and Unify's knowing and reckless submitting of adverse reports and reporting inaccurate and invalidated information to the [credit reporting agencies, those agencies] continue to

publish said adverse and false information on [Henderson's] credit file.").

"Concerned by 'abuses in the credit reporting industry,' Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Hammer v. Equifax Info. Sevs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); citing 15 U.S.C. § 1681(b)); *see also Donna v. Countrywide Mortg.*, No. 14-cv-03515-CBS, 2015 WL 9456325, at *5 (D. Colo. Dec. 28, 2015) ("The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" (quoting Section 1681(b))).

"The FCRA 'places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.'" *Donna*, 2015 WL 9456325, at *5 (quoting *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 1186, 1192 (D. Kan. 2002)). Based on Henderson's allegations, the banks fall into the last category.

But, insofar as Henderson asserts a claim against the banks as furnishers of information, under 15 U.S.C. § 1681s-2(a), it "fails as a matter of law because § 1681s-2(a) provides no private cause of action." *Id.* (collecting cases); *see also Scott v. Amex/Centurion S&T*, Nos. 3:01-cv-1594-H, -1595-H, -1596-H, 1597-H, 1598-H, 1599-H, -1600-H, -1601-H, -1602-H, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001) ("For furnishers of information to be liable to plaintiff under the FCRA, the Court

must find non-compliance with § 1681s-2. That section addresses the responsibilities of furnishers of information to consumer reporting agencies. There is no cause of action, however, for failures to comply with § 1681s-2(a), except for actions by the State on behalf of residents of the State, as provided in § 1681s(c)(1)(B). *See* 15 U.S.C. § 1681s-2(c) (1998). Section 1681s-2(a) is exclusively enforced 'under section 1681s ... by the Federal agencies and officials and the State officials identified in [that] section.' *Id.* § 1681s-2(d).").

> Sections 1681n and 1681o, nevertheless, provide a private cause of action for the willful or negligent failure to comply with the requirements of § 1681s-2(b). *McMillan v. Experian Information Servs. Inc.*, 119 F. Supp. 2d 84, 88-89 (D. Conn. 2000). "[T]he plain language of Sections 1681n and Section 1681o when read in conjunction with Section 1681s-2, expressly provides a consumer remedy for violation by a furnisher of credit information of the obligations imposed under 15 U.S.C. § 1681s-2(b)." *Id.* at 89. The duties created by subsection (b) arise, however, only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information. *See* 15 U.S.C. § 1681s-2(b)(1) (1998). No cause of action against the furnisher of information accrues, therefore, until after the furnisher receives the requisite notice from a consumer reporting agency. That the consumer has notified the furnisher of information of a dispute does not suffice. *See Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001).

*Scott*, 2001 WL 1645362, at *4 (footnote omitted); *see also Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) ("Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C.A. § 1681s-2(b). To recover against a furnisher for violations of § 1681s-2(b), a plaintiff

must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." (citations and footnote omitted)).

But "nothing in [Henderson's operative complaint] indicates that defendants, i.e. the furnishers of information, received any notice from a credit reporting agency." *Scott*, 2001 WL 1645362, at *4.

"In the absence of an allegation that defendants failed to comply with § 1681s-2(b) after receiving notice from a credit reporting agency, the Court should dismiss the FCRA claims as frivolous. In the absence of notice to defendants from a credit reporting agency, the claims lack an arguable basis in law. The legal theory simply has no merit without some advance notice to defendants by a credit reporting agency. That element is lacking under the scenario presented by [Henderson]." *Scott*, 2001 WL 1645362, at *4; *see also Green v. RBS Nat'l Bank*, No. 4:06-CV-0188-HLM, 2008 WL 11417395, at *9 (N.D. Ga. Jan. 23, 2008) ("To state a cause of action under § 1681s-2(b), the plaintiff must show that the furnisher of information received notice of a dispute from a consumer reporting agency, as opposed to receiving notice from the plaintiff alone." (collecting cases)); *id.* at *9 n.4 ("Although Plaintiff may contend that he himself notified Defendant or Citizens Bank of disputes concerning the Account, no duty arose under § 1681s-2(b) unless and until Plaintiff filed a formal dispute with the consumer reporting agencies and the consumer reporting agencies

notified Defendant or Citizens Bank of the dispute. Plaintiff could not trigger the duties of § 1681-s2(b) simply by notifying Defendant or Citizens Bank of a dispute himself." (collecting cases)); *Donna*, 2015 WL 9456325, at *5 ("Here, Ms. Donna fails to allege that the Defendants ever received notice of a dispute from a credit reporting agency. She fails to allege the critical link between the consumer reporting agencies and the Defendants. This claim fails to state a claim to which relief can be granted against the Defendants.").

Henderson finally alleges "fraud in the factum," specifically that each bank "failed to fully disclose the terms and conditions of the alleged loan to [her] and falsely represented to [her] that it was 'lending' its own pre-existing 'money' to [her]." Dkt. No. 22 at 13. "[F]raud in factum 'is defined as "[m]isrepresentation as to the nature of a writing that a person signs with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms."'" *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 465 (5th Cir. 2003) (quoting *FDIC v. Firemen's Ins. Co.*, 109 F.3d 1084, 1089 n. 1 (5th Cir. 1997) (quoting, in turn, BLACK'S LAW DICTIONARY 661 (6th ed. 1990))). And, regardless of the type of fraud alleged, Henderson's conclusory averments fall short of the particularity required to allege a plausible fraud claim.

Rule 9(b) imposes a heightened pleading requirement for a fraud claim and requires a party that alleges fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations and internal quotation marks omitted); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 384 (5th Cir. 2003) (explaining that "Rule 9(b) requires that the plaintiff allege the particulars of time, place, and contents of the false statements, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who, what, where, and how' of the alleged fraud" (internal quotation marks and citations omitted)).

The Fifth Circuit has explained that, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and that "[t]he plaintiffs must set forth specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks and citations omitted; emphasis in original). "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *Willard*, 363 F.3d at 385.

Further, "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury must not be mistaken for license to base claims of fraud on

speculation or conclusory allegations." *Dorsey*, 540 F.3d at 339 (internal quotation marks and citations omitted). So, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Willard*, 336 F.3d at 385.

### Further Leave to Amend

Federal Rule of Civil Procedure 15 "gives plaintiffs a temporary right to amend their complaints," and, even after that right expires, Rule 15 "*requires* courts 'freely give leave [to amend] when justice so requires.'" *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citing FED. R. CIV. P. 15(a)(1), then quoting FED. R. CIV. P. 15(a)(2)). But Henderson has already amended her complaint "once as a matter of course," FED. R. CIV. P. 15(a)(1), and "[o]nce means once," *Logue v. Patient First Corp.,* 246 F. Supp. 3d 1124, 1127 (D. Md. 2017). Consequently, she may not amend her complaint again without obtaining leave of the Court (or the consent of the defendants).

As the Court previously explained to Henderson, in ordering her to respond to the motions to dismiss the amended complaint, "[g]iven the posture of this proceeding, the Court will not entertain a motion for leave to amend until it rules on the pending motions to dismiss. So, through her response to those motions, Henderson should show the Court that, if her amended complaint is dismissed, why the Court should grant her leave to amend her complaint a second time." Dkt. No. 28 at 2-3 (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or

her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').")).

Because Henderson has not made this showing, *see* Dkt. Nos. 29-31, the Court should now dismiss her claims with prejudice.

## Recommendation

The Court should grant the motions to dismiss the first amended complaint [Dkt. Nos. 23, 24], deny the motion for judicial notice [Dkt. No. 38], as unnecessary, and dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 23, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE